NOT RECOMMENDED FOR PUBLICATION
 File Name: 21a0354n.06

 Case No. 20-3925

 UNITED STATES COURT OF APPEALS
 FOR THE SIXTH CIRCUIT

 FILED
 ) Jul 20, 2021
UNITED STATES OF AMERICA, DEBORAH S. HUNT, Clerk
 )
 Plaintiff-Appellee, )
 ) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
 ) THE NORTHERN DISTRICT OF
CESAR MELENDEZ-PEREZ, ) OHIO
 Defendant-Appellant. )
 )

 Before: SILER, MOORE, and THAPAR, Circuit Judges.
 SILER, J., delivered the opinion of the court in which MOORE and THAPAR, JJ., joined.
MOORE, J. (pg. 7), delivered a separate concurring opinion.

 SILER, Circuit Judge. Defendant Cesar Melendez-Perez pled guilty to conspiracy to

distribute cocaine and possession with intent to distribute cocaine. The district court sentenced

him to 163 months’ imprisonment. Now, he challenges his sentence, claiming that the district

court improperly designated him as a career offender. For the reasons that follow, we affirm.

 I.

 In 2019, law enforcement investigated a large-scale drug trafficking operation in Lorain,

Ohio, which led to Melendez-Perez’s arrest. Thereafter, Melendez-Perez pled guilty to conspiracy

to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, and possession

with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).
Case No. 20-3925, United States v. Melendez-Perez

 Melendez-Perez’s presentence report (PSR) calculated his offense level as 34 and found

that, based on his offense of conviction and two prior Ohio convictions for domestic violence, he

qualified as a career offender. A three-level reduction for acceptance of responsibility brought

Melendez-Perez’s total offense level down to 31. With a criminal history category of VI, this

yielded an advisory guidelines range of 188 to 235 months’ imprisonment.

 Melendez-Perez objected to his career offender status in light of United States v. Havis,

927 F.3d 382 (6th Cir. 2019) (en banc), that his offense of conviction—conspiracy to distribute

cocaine—was not a controlled substance predicate offense under the career offender sentencing

guidelines. The district court agreed and subsequently adopted a base offense level of 32, as

contemplated in the parties’ plea agreement. Melendez-Perez also argued that Havis disqualified

his prior domestic violence convictions as career offender predicate crimes of violence. The

district court overruled this objection.

 With a three-level reduction for acceptance of responsibility, the court applied an adjusted

offense level of 29. The court also classified Melendez-Perez’s criminal history category as VI,

due to his status as a career offender and because his criminal history score was seventeen. It then

calculated Melendez-Perez’s guidelines range to be 151 to 188 months. After discussing the

applicable 18 U.S.C. § 3553(a) factors, the court imposed a sentence of 163 months’ imprisonment

for each count, to be served concurrently.

 II.

 Melendez-Perez challenges his sentence on one ground. He argues that his two prior Ohio

domestic violence convictions, under Ohio Rev. Code § 2919.25(A), do not constitute predicate

offenses under the career offender sentencing guideline. He reasons that his prior Ohio domestic

 -2-
Case No. 20-3925, United States v. Melendez-Perez

violence convictions do not constitute crimes of violence under USSG § 4B1.1(a) because they

are categorically overbroad to qualify as violent felony predicates. This argument fails.

 The sentencing guidelines provide a more severe sentence if the defendant is classified as

a “career offender.” USSG § 4B1.1(b). That enhancement applies if (1) the defendant was at least

eighteen years of age when he committed the offense of conviction; (2) the “offense of conviction

is a felony that is either a crime of violence or a controlled substance offense”; and (3) “the

defendant has at least two prior felony convictions of either a crime of violence or a controlled

substance offense.” USSG § 4B1.1(a).

 We use the so-called “categorical approach” to determine, de novo, whether a prior offense

constitutes a “crime of violence” or a “controlled substance offense” under USSG § 4B1.1(a). See

Havis, 927 F.3d at 384–85; United States v. Soto-Sanchez, 623 F.3d 317, 321 (6th Cir. 2010). This

means we look only to the statutory definition of the offense and not the particular facts underlying

the conviction. Id. at 385.

 Under the guidelines, an offense is a “crime of violence” if it “has as an element the use,

attempted use, or threatened use of physical force against the person of another[.]” USSG

§ 4B1.2(a)(1). “Physical force” means “violent force—that is, force capable of causing physical

pain or injury to another person.” Johnson v. United States, 559 U.S. 133, 140 (2010) (interpreting

18 U.S.C. § 924(e)(2)(B)(i)); see also United States v. Morris, 885 F.3d 405, 409 (6th Cir. 2018)

(recognizing that § 4B1.2(a)(1) uses the same definition). “In other words, a predicate crime of

violence must have as an element the threat, attempt, or actual use of force capable of causing

physical pain or injury to another person.” United States v. Solomon, 763 F. App’x 442, 444 (6th

Cir. 2019).

 -3-
Case No. 20-3925, United States v. Melendez-Perez

 Melendez-Perez was convicted under subsection (A) of Ohio’s domestic violence statute.

At the time of his conviction, this meant that Melendez-Perez “knowingly cause[d] or attempt[ed]

to cause physical harm to a family or household member.” Ohio Rev. Code § 2919.25(A). Ohio

law, then and now, defines “physical harm to persons” as “any injury, illness, or other

physiological impairment, regardless of its gravity or duration.” Id. § 2901.01(A)(3). And the

Ohio Supreme Court has interpreted “injury” to mean the “invasion of any legally protected

interest of another.” State v. Suchomski, 567 N.E.2d 1304, 1305 (Ohio 1991) (emphasis omitted)

(quoting Injury, Black’s Law Dictionary (6th ed. 1990)).

 In light of Ohio’s inclusive definition of “injury” in this context, Melendez-Perez contends

that the domestic violence statute is broader than the “violent force” demanded under Johnson. He

emphasizes that “[u]nder Ohio law, the element of ‘physical harm’ can be accomplished without

violent force” because the element includes “physiological impairment.” And he argues that

Ohio’s interpretation of physiological impairment is conduct that falls outside of the conduct

described in the guidelines career-offender clause as an offense of violence.

 As Melendez-Perez admits, we have already faced this issue. In United States v. Gatson,

776 F.3d 405, 410–11 (6th Cir. 2015), this court addressed the same domestic violence statute and

held that it met Johnson’s requirements to be a “crime of violence.” The government asserts that

this holding ends the matter because “Melendez-Perez has not shown that there is an inconsistent

decision of the United States Supreme Court that requires modification of Gatson or that this court

sitting en banc has overruled that decision.”

 Melendez-Perez suggests otherwise. He avers that a subsequent decision about a separate

Ohio statute called the Gatson holding into question. In United States v. Burris, we considered

whether Ohio’s felonious assault and aggravated assault statutes, Ohio Rev. Code §§ 2903.11(a),

 -4-
Case No. 20-3925, United States v. Melendez-Perez

2903.12(A), constituted violent felonies under the ACCA. 912 F.3d 386, 390 (6th Cir. 2019) (en

banc) (lead op.). We determined that both statutes were divisible, with “subsection (A)(1) and

subsection (A)(2) of each statute set[ting] forth a separate crime.” Id. at 405 (lead op.). We then

held that the (A)(2) crimes were ACCA predicates because they require the use of a deadly weapon

or dangerous ordnance. See id. at 406 (lead op.). But the (A)(1) crimes, which criminalized the

causing of “serious physical harm to another,” were not. See id. at 400, 406 (lead op.).

 With respect to the (A)(1) crimes, we noted that Ohio defines “serious physical harm” to

include not only bodily injury but also “[a]ny mental illness or condition of such gravity as would

normally require hospitalization or prolonged psychiatric treatment.” Id. at 397 (lead op.) (quoting

Ohio Rev. Code § 2901.01(A)(5)(a)). Examining the statutes and Ohio caselaw led us to conclude

“that there is at least a ‘realistic probability’ that a person may be convicted of” Ohio (A)(1)

aggravated or felonious assault “without using physical force, as defined in the ACCA and the

Guidelines.” Id. at 399 (lead op.). Melendez-Perez argues that because Ohio defines “physical

harm” to include mental harm, a defendant could commit the crime of domestic violence without

using “physical force.” It follows, he claims, that domestic violence is not a violent felony under

the career offender guidelines.

 Melendez-Perez believes that Burris dictates this conclusion. But Burris does not sweep

as broadly as Melendez-Perez claims. Burris held that the definition of “serious physical harm,”

when applied to two particular statutes—Ohio’s felonious-assault and aggravated-assault

statutes—rendered those statutes “too broad to categorically qualify as violent-felony predicates

under the ACCA and the Guidelines.” 912 F.3d at 399 (lead op.). This matters because we do not

look at elements in isolation but at how the statutes as a whole will, in reality, be applied. See

Moncrieffe v. Holder, 569 U.S. 184, 191 (2013).

 -5-
Case No. 20-3925, United States v. Melendez-Perez

 Despite Melendez-Perez’s argument, the Burris “decision concerned an entirely different

statute, and this makes all the difference.” Solomon, 763 F. App’x at 445. Gatson held that Ohio

Rev. Code § 2919.25(A) qualifies as a career offender predicate. 776 F.3d at 410. In a similar

case, we stated that “Gatson’s holding controls the disposition of this case” and establishes that

“the district court correctly found Defendant’s prior Ohio domestic violence conviction to be a

crime of violence for purposes of the Career Offender Guideline.” United States v. Williams,

655 F. App’x 419, 422 (6th Cir. 2016).

 Melendez-Perez provides no Supreme Court case mandating a departure from Gatson and

this court sitting en banc has not overruled Gatson either, which leaves this panel bound by our

precedent. See United States v. Moody, 206 F.3d 609, 615 (6th Cir. 2000). And Gatson’s holding

controls the disposition of this case because “we treat a holding that a crime is categorically a

violent felony under the ACCA as controlling as to whether that same crime is a crime of violence

under § 4B1.1.” United States v. Hibbit, 514 F. App’x 594, 597 (6th Cir. 2013). Thus, the district

court correctly found defendant’s prior Ohio domestic violence convictions to be crimes of

violence for purposes of the career offender guideline.

 AFFIRMED.

 -6-
Case No. 20-3925, United States v. Melendez-Perez

 KAREN NELSON MOORE, Circuit Judge, concurring. I agree with the majority that our

earlier decision in United States v. Gatson, 776 F.3d 405 (6th Cir. 2015), controls the outcome of

this appeal. I write separately, however, to note that the panel in Gatson “read in an assumption

of force that the statutory language does not include” and did not “assess how the statute is applied

in Ohio” as required under our precedent. United States v. Solomon, 763 F. App’x 442, 449 (6th

Cir. 2019) (Moore, J., concurring).

 -7-